UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAREINA A SAULS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PIERCE COUNTY, et al,<br><br>　　　　　Defendants. | Case No. 3:25-cv-06089-TMC<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |

Plaintiff Lareina A. Sauls filed an ex parte motion for a temporary restraining order (TRO) requiring the Defendants—Pierce County and judges and officers of Pierce County Superior Court—to provide certain ADA accommodations in her state court proceedings. Dkt. 6. Ms. Sauls also requests that the Court prohibit Defendants from ruling on her cases and transfer her cases to another county. *Id*. at 8.

Because Ms. Sauls has not shown a likelihood of success on the merits or imminent, irreparable harm that will result in the absence of emergency relief, the Court DENIES her motion.

**I.　BACKGROUND**

Ms. Sauls is a Washington resident involved in judicial proceedings before Pierce County courts. Dkt. 1-1 at 2. She claims she has cognitive disabilities that "substantially limit her

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 1

cognitive processing, working memory, and ability to follow and retain rapid spoken information in high-stress settings such as court proceedings." *Id*. Defendants include Pierce County, Pierce County Superior Court, and "all judges and commissioners of Pierce County Superior Court who preside or may preside over Plaintiff's family-law and protection-order matters." *Id*. at 3. Ms. Sauls claims that Defendants wrongfully denied her requests for disability accommodations and ruled against her in reliance on mischaracterizations that were made by other parties or attorneys. *Id*. at 5–8.

Plaintiff has a separate case pending before this Court that contains similar allegations. *See Sauls v. Pierce Cnty.*, No. 3:25-CV-05957-TMC. New in this case is Ms. Sauls's claim that, on November 21, 2025, Pierce County Superior Court reopened a case that it previously adjudicated against her. Dkt. 1-1 at 8. She claims the reopened case is still "contaminated" by the existing court record and the "same unresolved ADA failures" that tainted the original adverse ruling. *Id*. at 8.

Ms. Sauls filed her proposed complaint with a motion to proceed *in forma pauperis* on December 4, 2025. Dkt. 1. The same day, Ms. Sauls moved for a temporary restraining order ("TRO") "(1) restraining Pierce County Superior Court from taking any further action in Plaintiff's family-law or protection order matters; (2) ordering immediate ADA accommodations for Plaintiff in federal court; (3) ordering recusal of Pierce County as an institution; (4) transferring venue of all related matters to Kitsap County Superior Court; (5) preserving all state-court ADA files, emails, logs, and communications; (6) authorizing discovery into ADA failures and discriminatory practices; (7) requiring written ADA determinations in plain language; (8) ordering that all filings and notices be provided in advance, in accessible format." Dkt. 6 at 7.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 2

## II. LEGAL STANDARD

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the standard for a TRO is "substantially identical" to the standard for a preliminary injunction). TROs sought without notice to the opposing party serve a limited purpose: "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters and Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

A plaintiff seeking a TRO must show: (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm absent preliminary relief, (3) the balance of equities favors injunction, and (4) the relief sought is in the public interest. *Winter*, 555 U.S. at 20; *Stuhlbarg*, 240 F.3d at 839 n.7. The movant must make a showing on each element of the *Winter* test. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). But "where the 'balance of hardships . . . tips sharply towards the plaintiff,' a plaintiff need only show 'serious questions going to the merits,' rather than likelihood of success on the merits[.]" *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (quoting *All. for the Wild Rockies*, 632 F.3d at 1135).

Additional requirements are imposed on TROs that are granted "ex parte," or without notice to the other party. Under Federal Rule of Civil Procedure 65(b), a TRO may be granted without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A); *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). As of this writing on December 5, 2025, no appearance in this Court has been made on behalf of any defendant, and

the Court reviews the present motion as one made ex parte. Nor has Ms. Sauls explained to the Court any efforts she made to give notice to the adverse parties. *See* Fed. R. Civ. P. 65(b)(1)(B).

### III.  DISCUSSION

Ms. Sauls's motion fails for several reasons. First, Ms. Sauls has not submitted an affidavit with "specific facts" clearly showing that "immediate and irreparable injury, loss, or damage" will occur before the Defendants can be heard in opposition and has therefore not met Rule 65(b)(1)'s strict requirement for issuance of a TRO without notice. Fed. R. Civ. P. 65(b)(1).

Ms. Sauls submitted a 20-page declaration stating that Pierce County reopened her case on November 21, 2025, and, absent a TRO, would "(1) rely on the same false record; (2) enforce and extend the same defective protection orders; (3) deny or ignore [her] ADA accommodations again; and (4) issue new custody, visitation, and safety orders before the federal court has any chance to correct the record." Dkt. 7 at 2. To support this conclusion, Ms. Sauls cites numerous hearings, orders, declarations, and emails relating to her Pierce County Superior Court case. Dkt. 7-1.

Ms. Sauls's cited evidence certainly shows that Pierce County and its officers have denied requested accommodations and ruled against her on multiple occasions. *See, e.g.*, Dkt. 7-1 at 3 (judge declining to elaborate written reasons why she granted an attorney's motion to withdraw); 6 (declining to find Ms. Sauls an "abusive litigant" but still awarding the opposing party $1,000 in attorney fees); 12–13 (docket entries indicating that a sanctions hearing was held without a court reporter). Ms. Sauls also details the specific accommodations she requested in November 2025 for the reopened cases. *See id*. at 16–17 (requesting that she receive written court orders, written notice of hearings, extended time for filing responses, "full and timely access to court records," audio or video recordings of hearings, "protection from disability-based characterizations," and a "prohibition on retaliation for requesting accommodations").

Critically, however, Ms. Sauls does not show that she will suffer irreparable harm before Defendants can be heard in opposition. She does not state what hearings or rulings are forthcoming, when they may take place, or what types of adverse rulings might result from her inability to obtain accommodations. Nor does she explain *how* not obtaining those accommodations would result in an adverse ruling. For example, Ms. Sauls has requested that Pierce County provide all orders in writing, Dkt. 7-1 at 16, but she has not explained how she would be prejudiced in any case in the absence of a written order. Relatedly, Ms. Sauls offers no explanation why any such prejudice could not be addressed on appeal in the state-court matter. The record does not contain specific facts showing imminent harm that would likely result before Defendants could receive notice of Ms. Sauls's allegations and respond.

Next, Ms. Sauls has not shown that her claims are likely to succeed on the merits. Several hurdles appear to preclude some of her claims. Her claims against Pierce County judges may be barred by absolute judicial immunity, which precludes liability for decisions on ADA accommodations that judges make "as a matter of courtroom administration." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).

Additionally, under the doctrine set forth in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (the "*Rooker-Feldman* doctrine"), federal district courts, as courts of original jurisdiction, lack subject matter jurisdiction to review errors allegedly committed by state courts. Challenges to previous Pierce County Superior Court rulings against Ms. Sauls, such as the enforcement of a protection order against her, Dkt. 1-1 at 5, appear to be the "de facto equivalent" of a state court appeal over which this court does not have jurisdiction. *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003); *see Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) ("It is a forbidden de facto

appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court.").

Ms. Sauls has not shown she is entitled to the "extraordinary remedy" of a TRO. *Winter*, 555 U.S. at 24. The Court therefore DENIES the motion. Dkt. 6.[1]

### IV.    CONCLUSION

The Court DENIES Ms. Saul's motion for a temporary restraining order. Dkt. 6.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 5th day of December, 2025.

Tiffany M. Cartwright
United States District Judge

---

[1] Ms. Sauls also filed a "motion for emergency ADA accommodations." Dkt. 3. There, Ms. Sauls asks this Court to provide specific accommodations such as an option for her remote appearance, pauses during hearings "for processing and note-taking," deadline extensions, and "[w]ritten clarification of complex rulings and deadlines upon request." Dkt. 3 at 5. Those requests will be addressed separately and are not the subject of this Order.